[Cite as *State v. Porter*, 2016-Ohio-5832.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 103185**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ROBERT M. PORTER

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-585728-A

**BEFORE:** Laster Mays, J., Kilbane, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** September 15, 2016

-i-

**ATTORNEY FOR APPELLANT**

Christopher R. Fortunato
13363 Madison Avenue
Lakewood, Ohio 44107


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    Gregory J. Ochocki
       Kevin R. Filiatraut
Assistant County Prosecutors
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

**{¶1}** Defendant-appellant, Robert M. Porter ("Porter"), appeals his guilty plea and sentence and asks this court to remand to the trial court ordering it to vacate his sentence and plea. After review of the record, we affirm in part, reverse in part, and remand to the trial court for resentencing.

## I. Facts

**{¶2}** Porter was indicted in Cuyahoga C.P. No. CR-14-585728 on the following eight counts for the armed robbery and murder of Curtis Marks ("Marks").

| | |
|---|---|
| Count 1: | Participating in a Criminal Gang, in violation of R.C. 2923.42(A), a second-degree felony, with one- and three-year firearm specifications; |
| Count 2: | Aggravated Murder, in violation of R.C. 2903.01 (A), an unclassified felony, with one- and three-year firearm specifications and a criminal gang activity specification; |
| Count 3: | Aggravated Murder, in violation of R.C. 2903.01(B), an unclassified felony, with one- and three-year firearm specifications and a criminal gang activity specification; |
| Count 4: | Aggravated Robbery, in violation of R.C. 2911.01(A)(1), a first-degree felony, with one- and three-year firearm specifications and a criminal gang activity specification; |
| Count 5: | Murder, in violation of R.C. 2903.01(B), an unclassified felony, with one- and three-year firearm specifications and a criminal gang activity specification; |
| Count 6: | Felonious Assault, in violation of R.C. 2903.11(A)(1), a second-degree felony, with one- and three-year firearm |

specifications and a criminal gang activity specification;

Count 7:    Kidnapping, in violation of R.C. 2905.01(A)(2), a first-degree felony, with one- and three-year firearm specifications and a criminal gang activity specification; and

Count 8:    Having Weapons Under Disability, in violation of R.C. 2923.13(A)(2), a third-degree felony, with one- and three-year firearm specifications.

{¶3} On August 27, 2014, the first day of trial, Porter agreed to plead guilty to Count 3, an amended charge of involuntary manslaughter in violation of R.C. 2903.04, a first-degree felony with a three-year firearm specification; and Count 4, aggravated robbery in violation of R.C. 2911.01, a first-degree felony. The one-year firearm specification and criminal gang activity specification on Count 3 would be dismissed along with all specifications on Count 4. The remaining counts would be nolled. The parties agreed that the sentencing range for this plea would be from 10 to 20 years incarceration, and that Porter would have to testify against his codefendant, Julius Webster ("Webster").

{¶4} The trial court conducted a plea hearing pursuant to Crim.R. 11, advising Porter of his rights and ensuring that Porter's plea was made knowingly, intelligently, and voluntarily. Porter assured the court that he understood the plea. The trial court informed Porter that because he was still on community control, it could affect his sentencing. (Tr. 10 and 11.) Porter was on community control in Cuyahoga C.P. No. 11-CR-548804. Porter stated that he understood. When the trial court completed its plea colloquy, Porter pleaded guilty to the amended charges.

{¶5} In January 2015, Webster's trial began and Porter refused to testify. On February 2, 2015, Porter filed a motion to withdraw his guilty plea. On February 19, 2015, the trial court conducted a hearing on Porter's motion to withdraw his guilty plea. Porter testified that he had been threatened by Webster because of his decision to testify against Webster as part of his plea deal. (Tr. 48.) Porter testified that he was concerned for the safety of his family, including his child, because threats had been made against them. (Tr. 62.)

{¶6} Porter was also concerned that he would have to testify about his relationship with the police department as a confidential informant. (Tr. 38 - 40.) The officer that Porter worked with told him that their relationship could be discovered during Porter's testimony and that it could threaten Porter and his family's safety. *Id.* Porter testified that he was unaware that his relationship with the police department would be discovered during his testimony at the Webster trial. (Tr. 63.)

{¶7} In addition to being fearful, Porter testified that he was innocent of the charges and should not have pleaded guilty. (Tr. 64.) Porter stated that he wanted to still testify against Webster, but change his plea to not guilty. *Id*. The state argued that Porter's plea was made knowingly and voluntarily. (Tr. 71.) The trial court overruled the motion on March 3, 2015, and proceeded to sentence Porter.

{¶8} The trial court sentenced Porter to ten years incarceration for involuntary manslaughter plus three years for the firearm specification. Porter was also sentenced to seven years for aggravated robbery. The sentences were run consecutively for an

aggregate of 20 years imprisonment. The trial court also ordered five years of mandatory postrelease control. Porter was on community control in Cuyahoga C.P. No. CR-11-548804. Porter was sentence to four years incarceration for violating his community control, to be served consecutively to Cuyahoga C.P. No. CR-14-585728, for an aggregate of 24 years imprisonment. Porter filed this timely appeal and assigns three assignments of error for our review.

> I.  The trial court abused its discretion when it overruled the appellant's motion to withdraw his plea.

> II.  The trial court abused its discretion when it sentenced the appellant to an addition term of incarceration in Cuyahoga C.P. No. 548804 additional to the instant case, when the appellant was not advised of such an additional time during his change of plea.

> III.  The appellant did not receive effective assistance of counsel who did not advise the appellant about serving any time of incarceration beyond 20 years in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution.

## II.  Withdrawing a Guilty Plea

### A.  Standard of Review

{¶9} We reviewed the denial of a motion to withdraw a guilty plea under an abuse of discretion standard. "For us to find an abuse of discretion in this case, we must find more than an error of judgment. We must find that the trial court's ruling was unreasonable, arbitrary or unconscionable." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992).

> A motion to withdraw a guilty plea is governed by the standards set forth in Crim.R. 32.1:  A motion to withdraw a plea of guilty or no contest may be

made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

*State v. Zaslov*, 8th Dist. Cuyahoga No. 95470, 2011-Ohio-2786, ¶ 7.

**{¶10}** "The general rule is that motions to withdraw guilty pleas before sentencing are to be freely and liberally allowed." *Id*. at ¶ 8. "However, a defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." *Xie* at 526. "In ruling on a presentence motion to withdraw a plea, the court must conduct a hearing and decide whether there is a reasonable and legitimate basis for withdrawal of the plea." *Id*. at 527. "The decision to grant or deny such a motion is within the sound discretion of the trial court." *Id.*

### B. Law and Analysis

**{¶11}** In Porter's first assignment of error, he argues that the trial court abused its discretion when it overruled his motion to withdraw his plea.

A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.

*State v. Gibson*, 8th Dist. Cuyahoga No. 102704, 2015-Ohio-5258, ¶ 7, citing *State v. Peterseim*, 68 Ohio App.2d 211, 214, 428 N.E.2d 863 (8th Dist.1980).

**{¶12}** In addition to the four factors listed upon, this court has expanded the factors to include: (5) whether the court gave full and fair consideration to the motion;

(6) whether the motion was made in a reasonable time; (7) whether the motion states specific reasons for withdrawal; (8) whether the accused understood the nature of the charges and the possible penalties; and (9) whether the accused was perhaps not guilty or had a complete defense. *State v. Robinson*, 8th Dist. Cuyahoga No. 89651, 2008-Ohio-4866, ¶ 23.

**{¶13}** In this case, Porter did not contest the first three factors of the *Peterseim* test. The record reveals that Porter was represented by highly competent counsel; that he was afforded a full hearing, pursuant to Crim.R. 11, before he entered his plea and that Porter was afforded a complete and impartial hearing on the motion. Porter, however, argues that the fourth factor was not satisfied. Porter contends that the court did not give full and fair consideration to the plea withdrawal request because the court considered the timing of the request versus the fear Porter felt for him and his family's safety. The motion was filed five months after Porter's plea was entered.

**{¶14}** The trial court disagreed with Porter's assertion and stated,

You reached an agreement with the state of Ohio in this matter to cooperate and at that point you reached the point of no return. There is no turning back from that. And I know that's a pill that's hard to swallow. You had to do what you were supposed to do and you didn't do it. And for whatever reasons, I'm not going to get into whatever reasons. We had a hearing in this matter. I did not find that your reasons were credible and, therefore, I did not allow you to withdraw the guilty plea.

(Tr. 101.)

**{¶15}** Porter testified at the motion hearing that he was scared for his and his family's safety, he still wanted to testify against Webster. He stated, "I said I'll still

testify against Julius Webster, but I want to withdraw my plea." (Tr. 65.) The trial court did not abuse its discretion in overruling the motion to withdraw the guilty plea because Porter did not provide a legitimate and reasonable basis for the withdrawal of the plea. Therefore, Porter's first assignment of error is overruled.

## II. Sentencing in CR-11-548804

### A. Standard of Review

{¶16} The Ohio Supreme Court, in *State v. Marcum*, Slip Opinion No. 2016-Ohio-1002, addresses the standard of review that appellate courts must apply when reviewing felony sentences. Applying the plain language of R.C. 2953.08(G)(2), the Ohio Supreme Court determined that an appellate court need not apply the test set out in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. *Marcum* at ¶ 1. An appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's finding under relevant statutes or that the sentence is otherwise contrary to law. *Id*. The court held that appellate courts may not apply the abuse of discretion standard in sentencing-term challenges. *Id.* at ¶ 10.

{¶17} Clear and convincing evidence is that measure or degree of proof which is more then a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and that will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph

three of the syllabus.  *Marcum* at ¶ 22.  "Contrary to law means that it is unlawful or is in violation of a legal regulation or a legal statute."  The Law Dictionary, *Featuring Black's Law Dictionary Free Online Legal Dictionary 2nd Ed.*, http://thelawdictionary.org/contrary-to-law/ (accessed July 28, 2016).

### B.    Law and Analysis

{¶18} In Porter's second assignment of error, he contends that the trial court abused its discretion when it sentenced him to an additional term of incarceration in CR-11-548804, additionally to the instant case, when Porter was not advised of such an additional time during his change of plea.  This issue was modified in appellant's supplement brief.   Porter's second assignment of error as amended contends that the trial court's sentencing of appellant to four years for three offenses is contrary to law under R.C. 2953.08(G).   Porter contends that the trial court failed to notify him that if he violated his community control sanctions, he could be sent to prison for that stated amount of time.   According to the journal entry from CR-11-548804, the trial judge advised Porter that if he violated his supervision, "the parole board may impose a prison term as apart of the sentence of up to one-half of the stated prison term originally imposed upon" Porter.

> If the sentencing court determines at the sentencing hearing that a community control sanction should be imposed and the court is not prohibited from imposing a community control sanction, the court shall impose a community control sanction.   The court shall notify the offender that, if the conditions of the sanction are violated, if the offender commits a violation of any law, or if the offender leaves this state without the permission of the court or the offender's probation officer, the court may impose a longer time under the same sanction, may impose a more

restrictive sanction, or may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation, as selected by the court from the range of prison terms for the offense pursuant to section 2929.14 of the Revised Code.

R.C. 2929.19(B)(4).

> Having established that the statutory scheme envisions the sentencing hearing itself as the time when the notification must be given, we next consider what language the trial court should use. By choosing the word "specific" in R.C. 2929.19(B)(4) to describe the notification that a trial judge must give when sentencing an offender to community control, the General Assembly has made clear that the judge shall, in straightforward and affirmative language, inform the offender at the sentencing hearing that the trial court will impose a definite term of imprisonment of a fixed number of months or years, such as "twelve months' incarceration," if the conditions are violated. To comply with the literal terms of the statute, the judge should not simply notify the offender that if the community control conditions are violated, he or she will receive "the maximum," or a range, such as "six to twelve months," or some other indefinite term, such as "up to 12 months." The judge is required to notify the offender of the "specific" term the offender faces for violating community control.

*State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, ¶ 19.

**{¶19}** Because the trial court judge did not state a specific prison term, but rather stated "violation of the terms and conditions may result in more restrictive sanctions as approved by law.   * * * [p]arole board may impose a prison term as part of the sentence of up to one-half of stated prison term originally imposed upon the offender," the court did not strictly comply with R.C. 2929.19(B)(4).

> "While we recognize the statutory complexities that have caused some courts to reject a strict-compliance view of R.C. 2929.19(B)(4) as overly literal, we cannot accept a substantial-compliance interpretation."   *Id.* at ¶ 24. The General Assembly has explicitly set forth the specific prison term requirement and has used the word shall to indicate the mandatory nature of the provision.   What the statute requires is clear, although reasonable minds could differ on how important this requirement is in the grand

scheme of R.C. Chapter 2929. We will not interpret such a clear statute to mean anything other than what it unmistakably states. See *Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, at ¶ 20 (when the intent of a statute is clear, it must be enforced as written). To do so would be to rewrite a statute that is clear on its face.

*Id.*

{¶20} "Our interpretation squares with a dominant purpose of current sentencing procedures, truth in sentencing, which aims to eliminate indefinite sentences in favor of specific terms, to increase certainty and predictability in sentencing." *Id.* at ¶ 25. *See Woods v. Telb*, 89 Ohio St.3d 504, 508, 733 N.E.2d 1103 (2000).

The General Assembly has entrusted considerable discretion to trial judges who sentence community control violators under R.C. 2929.15(B), thus seeming to downplay definiteness in sentencing due to the unpredictability of what a violation might be. Despite that discretion, R.C. 2929.19(B)(4)'s specific term requirement is clear on its face, and the General Assembly's direction that, at the time of the initial sentencing to community control, the offender should be informed of the definite prison term that awaits if community control is violated is totally consistent with the overall scheme of R.C. Chapter 2929.

*Brooks* at ¶ 25.

{¶21} Like in this case "a recurrent scenario involves a trial court that gave notice to the offender under R.C. 2929.19(B)(5) that the trial court would impose 'up to' a certain number of months or years for a violation." *Id.* at ¶ 26. *See, e.g.*, *State v. Grodhaus*, 144 Ohio App.3d 615, 2001-Ohio-2511, 761 N.E.2d 80 (4th Dist.) (trial court failed to comply with R.C. 2929.19(B)(4) when court warned offender it would impose "a prison term of up to five years" for a violation of community control); *State v. Housley*, 12th Dist. Clermont No. CA2002-07-060, 2003-Ohio-2223 (adequate compliance found

when trial court informed the offender it could impose any term up to the five-year maximum). However,

> as discussed above, this notice was ineffective because it did not occur at the sentencing hearing, but under the court of appeals' general approach to the certified issue, that court would surely have found the same statement sufficient to comply with R.C. 2929.19(B)(5) if it had occurred at the sentencing hearing.

*Brooks* at ¶ 26.

{¶22} "We determine that because R.C. 2929.19(B)(4) is so clear in requiring that the offender be notified of the specific term that awaits a violation of community control, the above scenarios simply stray too far from the statutory text to constitute compliance." *Id*. at ¶ 27. "In reviewing the cases, we note that much of the difficulty in complying with R.C. 2929.19(B)(5) has occurred as judges adapt to the new sentencing procedures." *Id*. at ¶ 28. "While community control is similar to the former concept of probation, there are significant differences between the two." *Id.* "These differences require a trial judge imposing community control to focus with special care on the relevant statutes and not to approach it as a form of probation." *Id.*

{¶23} For all the foregoing reasons, we hold that pursuant to R.C. 2929.19(B)(5) and 2929.15(B), a trial court sentencing an offender to a community control sanction must, at the time of the sentencing, notify the offender of the specific prison term that may be imposed for a violation of the conditions of the sanction, as a prerequisite to imposing a prison term on the offender for a subsequent violation. *Id.* at ¶ 29.

Therefore, we vacate Porter's additional sentence of four years and remand to the trial court for resentencing.

## III.  Ineffective Assistance of Counsel

### A.  Standard of Review

**{¶24}** In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that:   (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial.  *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   Judicial scrutiny of defense counsel's performance must be highly deferential.   *Strickland* at 689.  In Ohio, there is a presumption that a properly licensed attorney is competent.   *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999).

### B.  Law and Analysis

**{¶25}** In Porter's third assignment of error, he argues that he did not receive effective assistance of counsel who did not advise the appellant about serving any time of incarceration beyond 20 years.

> First, a court will determine whether there has been a substantial violation of any of defense counsel's essential duties to his client. When making this inquiry, the court will presume that licensed counsel has performed in an ethical and competent manner. Second, the court must determine whether the defense was prejudiced by counsel's ineffectiveness. Prejudice requires a showing to a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

(Internal citations omitted.) *State v. Bankston*, 8th Dist. Cuyahoga No. 92777, 2010-Ohio-1576, ¶ 55.

**{¶26}** Porter was advised, during his previous sentencing hearing for Cuyahoga C.P. No. CR-11-548804, that if he violated his community control sanctions, he would be sentenced to additional time of incarceration for the violation. In this case when he pleaded guilty, he violated his community control sanctions. Therefore, he was sentenced to additional time of incarceration. His attorney did not need to advise Porter of that because Porter already was aware that he could be sentenced to additional time. However, if the attorney was mistaken or did not know Porter would receive additional time, Porter still does not have a claim for ineffective assistance of counsel. "A lawyer's mistaken prediction about the likelihood of a particular outcome after correctly advising the client of the legal possibilities is insufficient to demonstrate ineffective assistance of counsel." *State v. Mays*, 174 Ohio App.3d 681, 2008-Ohio-128, 884 N.E.2d 607, ¶ 10 (8th Dist.). "A defendant cannot succeed on a motion to withdraw a plea based on erroneous advice when defendant states that no promises were made in exchange for the plea and when the possibility of jail is explained." *Westlake v. Barringer*, 8th Dist. Cuyahoga No. 73774, 1998 Ohio App. LEXIS 6242 (Dec. 24, 1998). During the sentencing, the trial court asked Porter if he had any additional comments in regards to his probation case, and he replied "no." (Tr. 104 and 105.) If Porter thought his attorney lied to him about the time he would be sentenced to, he could have brought it up to the judge at that point. He chose not too. Porter's third assignment of error is overruled.

**{¶27}** Therefore, we affirm in part, reverse in part, and remand to the trial court for resentencing.

It is ordered that the appellee and appellant split costs herein taxed.

The court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR